```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 4-2-13               │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIO THOMAS,

               Plaintiff,

    v.

THE CITY OF NEW YORK, DET. JESUS
RODRIGUEZ, Shield No. 4220, Individually and in his
Official Capacity, and P.O.'s JOHN DOE #1-10,
Individually and in their Official Capacity,

               Defendants.

11 Civ. 2219 (LAP) (GWG)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff Mario Thomas ("Plaintiff") brings this action under 42 U.S.C. § 1983 against

Defendants City of New York, New York Police Department ("NYPD") Detective Jesus

Rodriguez ("Rodriguez"), and John Does #1-10 (collectively "Defendants") asserting claims for

false arrest, malicious prosecution, unlawful strip search, and denial of the right to a fair trial

based on his arrest for the non-fatal shooting of Jason Price ("Price") in August, 2009 in the

Bronx, New York.

Defendants now move for summary judgment pursuant to Federal Rule of Civil

Procedure 56. Plaintiff cross-moves for summary judgment on the issue of probable cause for

Plaintiff's arrest. For the reasons set forth below, Defendants' motion is GRANTED, Plaintiff's

cross-motion is DENIED, and this action is hereby DISMISSED.

1

# BACKGROUND

## A. __Factual History__

On the night of August 14, 2009, Detective Rodriguez responded to the scene of a non-fatal shooting in the Bronx, New York.  (Def. R.56.1 Stmt. ¶ 3.)[1]  By the time Rodriguez arrived, the victim Jason Price had been transported by ambulance to Lincoln Hospital. (*Id*. ¶ 6.)  Rodriguez was told by other officers on the scene that Price had been walking southbound on Westchester and Union Avenues when he heard multiple gun shots, was struck in the leg, and fell to the ground. (*Id*. ¶ 7.)  Rodriguez was also told that Price did not know who shot him. (Pl. R.56.1 Stmt. ¶ 4.)[2]

Rodriguez noticed that the lighting in the area was good and that it was a clear night. (Def. R.56.1 Stmt. ¶ 8.)  He also observed seven shell casings on the ground in the close proximity to blood and clothing that had been removed from Price by first responders and determined that Price had been shot at close range.  (*Id*. ¶¶ 9-10.)

After leaving the scene, Rodriguez went to the hospital to interview Price.  (Pl. R. 56.1 Stmt. ¶ 5.)  As Rodriguez memorialized in the DD-5[3] he prepared after the visit, Price told him that he was "unable to identify anyone at the present time."  (*See* Rodriguez Decl., Ex. A at NYC 14.)[4]  A few days later on August 17, 2009, Detective Rodriguez returned to the hospital to interview Price.  (*See* Rodriguez Decl., Ex. A at NYC 52.)  Price told Rodriguez that he had undergone surgery the day before and requested that Rodriguez return at a later date but again stated that he "did not see who was shooting at him."  (*Id*.)

---

[1] "Def. R.56.1 Stmt." refers to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated June 27, 2012.
[2] "Pl. R.56.1 Stmt." refers to Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts, dated June 25, 2012.
[3] A "DD-5" is a "Complaint-Follow Up Information Report" form used by the NYPD to memorialize steps taken and information learned during the course of an investigation.  (*See* Rodriguez Decl. ¶ 5.)
[4] "Rodriguez Decl." refers to the June 27, 2012 Declaration of Jesus Rodriguez in support of Defendants' motion for summary judgment.  "Rodriguez Decl., Ex. A" refers to copies of DD-5's prepared by Rodriguez documenting steps taken in the investigation.

On August 23, 2009, after Price was discharged from the hospital, Detective Rodriguez visited Price at the home he shared with his mother to interview him further about the shooting. (*See* Rodriguez Decl., Ex. A at NYC 55.)  During this interview, Price told Rodriguez that just before he was shot, he had walked past a man who he recognized from the neighborhood who he knew only by the nickname "Breeze."  (*Id.*; Def. R.56.1 Stmt. ¶ 15(a).)  Price also told Rodriguez that upon being shot he fell to the ground, looked back, and saw Breeze standing in the direction of the gunfire.  (Def. R.56.1 Stmt. ¶ 15(d).)  After this interview, Rodriguez consulted with other officers to identify the individual who went by the nickname "Breeze" or "Breezy."  (*Id.* ¶¶ 18-19.) Rodriguez then created a photo array containing images of six individuals, including Plaintiff. (*Id.* ¶¶ 20-21; *see* Rodriguez Decl., Ex. B at NYC 66.)[5]

Rodriguez then visited Price again at his home on September 2, 2009, at which time Price identified Plaintiff from the photo array as the man who had walked past him on the night of the shooting.  (*Id.* ¶ 22.)

NYPD officers apprehended Plaintiff on November 16, 2009, and brought him to the 40th Precinct where Detective Rodriguez placed him under arrest for the shooting of Jason Price. (*Id.* ¶ 25.)  Plaintiff was charged with criminal use of a firearm, criminal possession of a weapon, and assault with intent to cause serious injury.  (Krasnow Decl., Ex. D, E ("Criminal Complaint.")[6]  The charges against Plaintiff were dismissed on May 26, 2010.  (Def. R.56.1 Stmt. ¶ 34.)

---

[5] "Rodriguez Decl., Ex. B" refers to documents related to the photo array prepared by Detective Rodriguez, including a copy of the photo array in which Price identified Plaintiff.

[6] "Krasnow Decl." refers to the declaration of Elizabeth Krasnow , submitted on June 27, 2012 in support of Defendants' motion for summary judgment.  "Ex. D" refers to the November 16, 2009 arrest report for Plaintiff Mario Thomas.  "Ex. E" refers to the November 17, 2009 Criminal Complaint for Thomas.

B. **Procedural History**

Plaintiff filed the complaint on March 31, 2011. [dkt. no. 1.]  Plaintiff moved for summary judgment on June 25, 2012 on the issue of probable cause [dkt. nos. 16-18], which Defendants opposed on July 27, 2012 [dkt. nos. 32-35.]  Plaintiff filed a reply on August 17, 2012. [dkt. nos. 37-38.]  Defendants moved for summary judgment on June 27, 2012.  [dkt. nos. 22-26.]  Plaintiff opposed Defendants' motion on July 27, 2012 [dkt. nos. 29-32] and Defendants replied on August 17, 2012. [dkt. no. 36.]

## DISCUSSION

A. **Legal Standard for Summary Judgment**

The court may grant summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004).  The role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Koch v.*

4

*Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). In making this judgment, the court must view the record in the light most favorable to the non-moving party. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325, 106 S.Ct. 2548; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of New York,* 322 F.3d 139, 140–41 (2d Cir. 2003).

   If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. *See, e.g., Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572 (2006); *Celotex,* 477 U.S. at 322; *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot "rely merely on allegations or denials" of the factual assertions of the movant, Fed.R.Civ.P. 56(e)(2); *see, e.g., Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001), nor can he rely on his pleadings or on merely conclusory factual allegations. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348; *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. *See,*

*e.g., Celotex,* 477 U.S. at 324; *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

To demonstrate a "genuine dispute," the opposing party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See, e.g., Anderson,* 477 U.S. at 242, 248, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9–10 (2d Cir. 1983); *see also Rogath v. Siebenmann,* 129 F.3d 261, 267 (2d Cir.1997).

**B.  42 U.S.C. § 1983**

Plaintiff brings claims against Defendants Rodriguez and the City of New York under 42 U.S.C. § 1983.  §1983 grants private citizens the right to sue the state or individuals acting under color of law who violate the citizen's constitutional rights.  *See* 42 U.S.C. § 1983.  To establish an action under § 1983, a plaintiff must prove that (1) the defendant has deprived the plaintiff of a right secured by the "Constitution and laws" of the United States, and (2) the deprivation occurred "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  *See Adickes v. S.H. Kress*, 398 U.S. 144, 150 (1970).

**C.  Plaintiff's False Arrest Claim**

Plaintiff claims he was falsely arrested by Defendants without probable cause.  A claim for false arrest derives from the Fourth Amendment "right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York

6

law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996).  Under New York law, a plaintiff

must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was

conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the

confinement was not otherwise justified. *See Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991);

*Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

Defendants argue they are entitled to summary judgment because Detective Rodriguez

had probable cause to arrest Plaintiff and, alternatively, that even in the absence of probable

cause he is entitled to qualified immunity for false arrest.  Plaintiff opposes Defendants' motion

and cross-moves for summary judgment on the basis that he was arrested without probable

cause.

### *1. <u>Probable Cause</u>*

The issue before the Court is whether Detective Rodriguez had sufficient knowledge to

warrant a reasonable belief that Plaintiff was the individual who shot Price.  Probable cause to

arrest is a complete defense to an action for false arrest, even where an individual is ultimately

acquitted. *Torraco v. Port Auth. of. N.Y. & N.J.,* 615 F.3d 129, 139 (2d Cir. 2010); *see also*

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "Probable cause to arrest exists when the

authorities have knowledge or reasonably trustworthy information sufficient to warrant a person

of reasonable caution in the belief that an offense has been committed by the person to be

arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991).  The court must look

at the "totality of the circumstances" and consider "the facts available to the officer at the time of

arrest."  *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); *Ricciuti v. New York City*

*Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).  The focus is on the information available at the

time; the subjective intent of an officer is irrelevant.  *Espada v. Schneider*, 522 F.Supp.2d 544,

552 (S.D.N.Y. 2007).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

Defendants contend that Detective Rodriguez had probable cause to arrest Plaintiff based on his knowledge from the investigation and interviews with Price, specifically Price's statements on August 23, 2009 that he recognized Plaintiff as the man who walked by him just before he was shot and on his subsequent identification of Plaintiff from a photo array.  Plaintiff contends the record shows that the facts known to Detective Rodriguez were insufficient to support probable cause.  This case does not involve the issue of whether statements made by the eyewitness victim were trustworthy or whether his identification of Plaintiff was reliable but instead on whether the quantum of evidence provided by the victim was sufficient to support conclusions drawn by Defendants from that evidence.

There is no dispute from the record that Price saw Plaintiff walk by him on an empty street just prior to being shot, that at the time Price saw Plaintiff there were no other people in the area, that Price was shot at close range from just a few feet away, that Price turned in the direction of the gunfire after being hit and saw Plaintiff, and that while on the ground he continued to see gunfire coming from Plaintiff's direction but did not see whether Plaintiff was holding a gun.  It is undisputed that Price did not tell Rodriguez until their third meeting over a week after the incident that he had seen an individual he recognized in the vicinity of the shooting and that until that time he told Rodriguez he was unable to identify who shot him.  (*See, e.g.,* Cohen Decl. I, Ex. C[7] ("the victim further states that he is unable to identify anyone at the

---

[7] "Cohen Decl. I" refers to the June 25, 2012 Declaration of Gerald M. Cohen in support of Plaintiff's motion for summary judgment.  "Cohen Decl., Ex. C" refers to a copy of NYPD DD-5 No. 3 related to the investigation, dated August 15, 2009.

present time.")); (*see* Cohen Decl. II, Ex. A ("Rodriguez Dep.") at 37:12-18.)[8] (Q: The victim

told you specifically he didn't see who shot him?  A: Yes.  Q: You asked him did you see who

shot you?  A: Yes.  Q: He responded he didn't see anyone? A:  Yes.).

      There is also no dispute that even after Price changed his story, he never explicitly told

Rodriguez that he saw Plaintiff shoot him but that Rodriguez drew that conclusion on his own

based on the investigation and interviews with Price.  Defendants argue that when Price

identified Plaintiff out of the photo array he "intended to identify the shooter [and], in any event,

it was more than reasonable for Rodriguez to draw that conclusion." (Def. Reply at 6.) [9]

Nonetheless, Rodriguez testified that:

> A:  The victim had advised me during the interview that on the night of the
> shooting, that he walked by the individual that shot him, that he knew who the
> individual was when he walked by him.
> Q:  He informed you that he saw the individual that shot him or he saw an
> individual walk by him that he knew?
> A:  That he walked by an individual that he knows by a nickname.
> Q:  At the time did he tell you that he actually observed that individual take out a
> gun and shoot him?
> A: He said during that interview that when the individual walked by him, he heard
> shots and was shot.
> (Rodriguez Dep. at 67:15-68:-6.)

Rodriguez further testified as follows:

> A:  [The arrest report for Plaintiff states] that [Plaintiff] did fire numerous shots,
> striking him in the right thigh.
> . . .
> Q:  Is that what the complaining witness told you?
> A:  No, this is something I put in there.
> Q:  That's your conclusion?
> A:  Yes.
> (*Id*. at 112:23-113:7)

---

[8] "Cohen Decl. II" refers to the July 27, 2012 Declaration of Gerald M. Cohen in opposition to Defendants' motion for summary judgment.  "Cohen Decl. II., Ex. A" refers to portions of the transcript of the February 21, 2012 deposition of Detective Jesus Rodriguez.
[9] "Def. Reply" refers to Defendants' Reply Memorandum of Law in Further Support of their Motion for Summary Judgment, dated August 17, 2012.

Based on the record, there are two issues that according to Plaintiff undermine Detective Rodriguez's knowledge of facts establishing probable cause.  First, Plaintiff claims that Rodriguez ignored information demonstrating that Plaintiff was not the only person in the vicinity at the time Price was shot.  Rodriguez testified that, other than Plaintiff and Price, there was no one else in the vicinity of the shooting:  "Going based on . . . what I know he told me that night, he noticed Breeze walk by him, Breeze was the only one on the block, there was no one else in the vicinity."  (Rodriguez Dep. at 97:8-11.)  The criminal complaint filed against Plaintiff stated that "[Rodriguez] is further informed by [Price] that there were no other pedestrians at said location." (Criminal Complaint at NYC 109.)  Plaintiff claims this testimony is disputed by the record.  Plaintiff cites two documents prepared by Rodriguez which he contends suggest that there was more than one other person in the vicinity at the time of the shooting.  The DD-5 prepared by Rodriguez on the night of the shooting stated that when he arrived at the scene, he was told by a fellow officer that Price "did not see who fired the shots or where the individuals fled."  (Cohen Decl. II, Ex. F.)[10]  In addition, included on one page of handwritten notes that Plaintiff alleges were prepared by Rodriguez is the following statement: "4-5 shots – saw them running."  (Cohen Decl. II, Ex. L.)[11]

In addition, Plaintiff claims Rodriguez's testimony that Price told him he was shot immediately after walking by Plaintiff is contradicted by the record.  Rodriguez testified that on the night Price identified Plaintiff from the photo array, Price told him that "as soon as [Price] walked by [Breeze], [Price] heard the shots, he turned around, noticed he got hit, noticed Breezy there, and still heard shots coming from the direction that Breeze was at towards his direction." (Rodriguez Dep. at 97:11-15.); (*see* Rodriguez Dep. at 92:25-93:2; 68:4-6 ("[Price] saw

---

[10] "Cohen Decl. II, Ex. F." refers to a copy of NYPD DD-5 No.1 related to the investigation, dated August 15, 2009.

[11] "Cohen Decl. II, Ex. L" refers to a one page copy of "Detective Rodriguez's Handwritten Notes."

[Plaintiff] walking by him.  And as soon as they walked by each other, he heard the shots.  And when he looked back, Breeze was there"; "[Price] said during that interview that when the individual walked by him, he heard shots and was shot.")  Plaintiff claims these statements are contradicted by the DD-5 Rodriguez prepared after interviewing Price at his house on August 23, 2009 which states that Price said "he had walked by an individual he knows that evening [and] he further states that he was shot minutes after he walked by this individual named Breeze." (Cohen Decl. II, Ex. I.) [12]  Defendants argue in reply that the phrase "minutes after" was "a figure of speech intended to convey immediacy."  (Def. Reply at 3.)  According to Plaintiff, these two issues demonstrate that Defendants lacked probable cause to arrest him.

The Court finds that Defendants are entitled to summary judgment on the issue of probable cause for Plaintiff's arrest.  Under the totality of the circumstances in light of "the facts available to [him] at the time of the arrest" gained from the investigation and interviews with the victim, Rodriguez had probable cause to believe Plaintiff was the individual who shot Price.  *See Ricciuti,* 124 F.3d at 128.  It is undisputed that Rodriguez possessed the following information: Price saw Plaintiff walk by him just prior to hearing gunshots and being shot in the leg; Price was shot at close range, only a few feet away; after being hit in the leg by a bullet, Price fell to the ground, looked back, and saw Plaintiff standing in the direction from where the gunfire was coming.

Probable cause is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Celestin v. City of New York*, 581 F.Supp.2d 420, 433 (E.D.N.Y. 2008) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).  As such, arresting officers can support an arrest

---

[12] "Cohen Decl. II, Ex. I" refers to a copy of NYPD DD-5 No. 23 related to the investigation, dated August 27, 2009.

with a "probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Valentine,* 539 F.3d 88, 94 (2d Cir. 2008) (citing *Illinois v. Gates,* 462 U.S. 213 (1983)).

Plaintiff argues that disputed facts related to what Price told Rodriguez make summary judgment improper.  But even assuming Plaintiff's assertions as true for the purpose of this motion while mindful of the fact that Defendants bear the burden of establishing probable cause, any disputed facts are not material to whether probable cause was a "reasonable conclusion to be drawn from the facts known to [Rodriguez] at the time of the arrest." *Zellner*, 494 F.3d at 369.  While all facts at this stage must be construed in the light most favorable to plaintiff, "officers themselves may make 'reasonable inferences from the facts they possess at the time of [the arrest] based upon their own experiences.'" *Mesa v. City of New York*, 2013 WL 31002, at *7 (S.D.N.Y. Jan. 3, 2013) (*citing Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)).  Viewing the evidence in the light most favorable to Plaintiff, the discrepancies in the record equate to a scenario in which Plaintiff walked by Price on an empty street, minutes later Price was shot, and Price saw multiple people flee the scene.  Probable cause existed even under these facts given that it is undisputed that Price was shot from just a few feet away and saw Plaintiff standing in the direction from which the gunfire continued to come.

Nor is probable cause diminished, as Plaintiff argues, by Price's initial reticence to identify Plaintiff during the two conversations he had with Rodriguez in the hospital.  Having worked for over ten years in the 40th Precinct, which experiences a high volume of violent and gang-related crime, Rodriguez was aware that victims of such crimes are frequently hesitant or entirely unwilling to identify assailants out of fear of reprisal against them or their family.  (*See* Rodriguez Decl. ¶¶ 1-3.)  Although officers believed the shooting was not gang-related,

Rodriguez was aware that Price was a known member of the "Crips" gang.  (Rodriguez Dep. at 62:24-63:3.)  Rodriguez testified that he "got the sense that [Price] was afraid of what's going on and him indicating an individual in this case due to the fact that he lives at home, that he lives with his parents, and they live in the vicinity of where the shooting took place."  (*Id.* at 104:23-105:3.)  This awareness was relevant to Rodriguez's not foreclosing the possibility that Price could identify the shooter even though he twice stated he was unable to do so.  The fact that Price changed his story between the second and third interviews bolsters the reasonableness of Rodriguez's belief that Price knew who shot him but was unwilling to say so, and that fact likely played a role in Rodriguez drawing the conclusion that Plaintiff was the shooter.

Based on the record, there is no dispute that Defendant Rodriguez had probable cause to arrest Plaintiff for the shooting of Jason Price.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's false arrest claim.

### *2. Qualified Immunity*

Defendants assert that even if Plaintiff's false arrest claim is not dismissed, Defendant Rodriguez is entitled to summary judgment on the basis of qualified immunity.  Police officers are entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."  *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996).  In the false arrest context, "[a]n arresting officer is entitled to qualified immunity . . . even when probable cause to arrest does not exist, if he can establish that there was arguable probable cause to arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *see Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (finding that a police officer is qualifiedly immune if he had "an objectively reasonable belief that his actions are lawful.")

Even in the absence of probable cause, an officer acts with arguable probable cause if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed.  *Cerrone*, 246 F.3d at 202; *see Ricciuti*, 124 F.3d at 128 (an officer is protected by qualified immunity if it was "objectively reasonable for the officer to believe that there was probable cause to make the arrest, or [] if reasonably competent police officers could disagree as to whether there was probable cause" to do so.)  "The relaxation of classic probable cause in these instances reflects the inevitability of the fact that 'law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'"  *Mesa v. City of New York*, 2013 WL 31002, at *9 (S.D.N.Y. Jan. 3, 2013) (*citing Cerrone*, 246 F.3d at 202.); *Caldarola*, 298 F.3d at 162 (arguable probable cause exists where officers hold reasonable, albeit mistaken, belief as to probable cause."

The focus is not on whether or not the officer's conduct was correct but whether it was objectively reasonable under the circumstances.  *See Lennon*, 66 F.3d at 421.  Only when "'no officer of reasonable competence could have made the same choice in similar circumstances'" is an officer's conduct unreasonable and undeserving of qualified immunity. *Anthony v. City of New York,* 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Lennon*, 66 F.3d at 420-210) (an officer's determination is objectively reasonable "if officers of reasonable competence could disagree on whether the probable cause test was met.")  As such, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate."  *Lennon*, 66 F.3d at 421.

As explained above, Detective Rodriguez did not violate Plaintiff's clearly established constitutional right to be free from unreasonable seizures.  Regardless, Rodriguez is qualifiedly

14

immune from a false arrest claim because his conduct was objectively reasonable.  Based on the undisputed facts, and accepting Plaintiff's version of the disputed facts based on the few discrepancies in the record, Detective Rodriguez had at least arguable probable cause to believe Plaintiff was the perpetrator.  As discussed more fully above, even assuming Price was shot "minutes" after seeing Plaintiff and that Plaintiff was not the only individual in vicinity of the shooting, this Court cannot say that no jury would find that officers could not disagree on whether Detective Rodriguez had probable cause under these facts.

Accordingly, Defendant Rodriguez is entitled to qualified immunity on Plaintiff's false arrest claim.

### D.  <u>Plaintiff's Malicious Prosecution Claim</u>

Plaintiff asserts a malicious prosecution claim.  To state a claim for malicious prosecution, a plaintiff must establish the elements of malicious prosecution under state law, and then show that her Fourth Amendment rights were violated after legal proceedings were initiated. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *see Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  Under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal  proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).  For purposes of this motion, the first and fourth elements are not in dispute. Defendants commenced criminal proceedings against Plaintiff which were ultimately terminated in his favor.  (*See* Def. R.56.1 Stmt. ¶ 34.)

The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Savino v. New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Probable cause

to prosecute "is a distinct inquiry from an inquiry into the existence of probable cause to arrest." *Carrow v. New York*, 2010 WL 1009996, at *8 (S.D.N.Y. 2010) (*citing Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999) (the "relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced.")  Probable cause for the purposes of malicious prosecution is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of or whether a discreet and prudent person would be led to the belief that a crime had been committed by the person charged." *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F.Supp.2d 118, 129-30 (S.D.N.Y. 2012).  "The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the [civil] defendant at that time." *Id*. at 130.

When probable cause exists at the time of the arrest, evidence surfacing later eliminates probable cause for the purposes of a malicious prosecution claim if "the groundless nature of the charges [is] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996).  As stated above, Plaintiff's arrest was supported by probable cause.  After being arrested, Plaintiff spoke very briefly with Detective Rodriguez but did not tell him where he had been on the night of the shooting and did not provide him with the names of any of the individuals he had been with at the time. (Def. R.56.1 Stmt. ¶ 38; Krasnow Decl., Ex. C at 56-57.)[13]  Plaintiff has provided no evidence that Defendants learned of any intervening facts between the arrest and the initiation of criminal proceedings the following day that could eliminate probable cause.

---

[13] "Krasnow Decl., Ex. C" refers to excerpts from the January 10, 2012 deposition of Plaintiff Mario Thomas.

As for malice, Plaintiff claims it can be inferred by the lack of probable cause that Plaintiff was the shooter and further alleges that Rodriguez forwarded falsified documents to the District Attorney's Office to encourage it to prosecute Plaintiff.  A lack of probable cause to prosecute "generally creates an inference of malice," *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003), but as already discussed, Plaintiff's arrest was supported by probable cause. Plaintiff's claim that Rodriguez forwarded false information to the District Attorney's Office is similarly without merit.  The two documents to which Plaintiff refers are two DD-5 reports in which Rodriguez stated that Price actually told him that Plaintiff was the shooter.  (*See* Cohen Decl. II, Exs. D and R)[14] ("[Price] did pick [Plaintiff out of the photo array] . . . as the individual who shot him the night of the incident" and "[Plaintiff] did fire numerous shots at c/v (Price) striking him in th[e] right thigh.")  Plaintiff claims these documents conflict with Rodriguez's deposition testimony that Price never explicitly told him that Plaintiff was the shooter but that instead Rodriguez had drawn that conclusion based on his investigation.

Nonetheless, the criminal complaint states that Price told Rodriguez that he saw Plaintiff walk by him, not that Price told Rodriguez that Plaintiff shot him.  Rodriguez did not draft the criminal complaint but instead completed the arrest paperwork and then "conferred with a representative from the District Attorney's Office, who then drafted the criminal complaint based on the information that Price had provided" and that "[he] simply provided the representative with the information that Price had given [him] and did not determine the charges to be included on the criminal complaint."  (Rodriguez Decl. ¶¶ 13-14.)

The complaint states, in pertinent part:

Deponent (Detective Rodriguez) is informed by JASON PRICE, that at the above time and place, while walking southbound on Westchester Avenue he observed

---

[14] "Cohen Decl. II, Ex. D" refers to a copy of NYPD DD-5 No. 47, dated November 21, 2009 and "Ex. R" refers to a copy of NYPD DD-5 No. 32, dated September 9, 2009.

defendant (Plaintiff) walking Northbound on Westchester Avenue and observed defendant walk past him.  Deponent is further informed by informant that there were no other pedestrians at said location.  Deponent is further informed by Price that he turned around in the direction where defendant headed and heard numerous gun shots being fired and observed one bullet enter and exit his upper right thigh.

Given that the District Attorney drafted the criminal complaint, there is no basis for Plaintiff's assertion that criminal proceedings were commenced under the conclusion that Price had stated that Plaintiff was the shooter.  Instead, the District Attorney instituted criminal proceedings against Plaintiff with the understanding that Price had not explicitly identified Plaintiff as the shooter.

Accordingly, Plaintiff has failed to show that a reasonable jury could find that Defendants maliciously prosecuted him.  Additionally, for the reasons explained above, Defendant Rodriguez is entitled to qualified immunity on Plaintiff's malicious prosecution claim.  Summary judgment is therefore granted in favor of Defendants on Plaintiff's claim.

## E.  **Plaintiff's Denial of a Fair Trial Claim**

Plaintiff asserts a denial of a fair trial claim, arguing that Defendants created falsified evidence and testimony and forwarded that information to prosecutors thereby misleading them throughout the criminal proceedings.  (See Krasnow Decl., Ex. A ("Complaint") ¶¶ 48-50.) When a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  Neither an actual trial being conducted nor a conviction is required to sustain a fair trial claim under § 1983.  *See id*. at 127; *see Douglas v. City of New York*, 595 F.Supp.2d

333, 347-48 (S.D.N.Y. 2009).  Furthermore, contrary to Defendants' argument, a denial of a fair

trial claim is not necessarily duplicative of a malicious prosecution claim.

Plaintiff's claim is based on his assertion that Defendant Rodriguez fabricated evidence

asserting he was told by Price that Plaintiff shot him.  Rodriguez testified that his two statements

that Price indicated Plaintiff was the shooter were conclusions drawn by him rather than

explicitly stated by Price.  An officer's drawing a conclusion, even if mistaken, is not tantamount

to fabricating evidence.  Furthermore, as explained above, the criminal complaint that the

District Attorney's office drafted did not rely on this allegedly fabricated evidence because it

stated that Price saw Plaintiff walk by prior to the shooting, not that Price saw Plaintiff shoot

him.  Because Plaintiff's arrest was supported by probable cause, and there is no evidence that

Defendants forwarded false information to prosecutors, a reasonable jury could not find that

Plaintiff was denied a fair trial.  *cf. Douglas v. City of New York*, 595 F.Supp.2d 333, 347

(S.D.N.Y. 2009) ("a reasonable jury could find defendants lacked probable cause to arrest

plaintiff and forwarded false information to the Bronx district attorney, thereby violating

plaintiff's constitutional right to a fair trial.")

Defendants' motion for summary judgment on Plaintiff's denial of a fair trial claim is

therefore granted.

### F.  Plaintiff's Strip Search Claim

Plaintiff's complaint asserts an Unlawful Search claim, stating that Plaintiff "was

subjected to an unreasonable and intrusive strip search."  (Complaint ¶ 54.)  Plaintiff testified,

however, that he was not strip searched and did not recall being searched in any manner. (Def.

R.56.1 Stmt. ¶ 28.)

In any case, Plaintiff does not address this claim in opposition to Defendant's summary judgment motion and has therefore abandoned it.  *See e.g., Lipton v. Cnty. of Orange*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) (declaring claim abandoned where plaintiff failed to respond to defendant's arguments for dismissing the claim); *see also Bonilla v. Smithfield Assoc., LLC*, 2009 WL 4457304, at *4 (S.D.N.Y. 2009) (plaintiff's claims dismissed as abandoned because plaintiff failed to address them in opposition to defendant's motion).

### G. <u>Plaintiff's Claims against Defendant City of New York</u>

Plaintiff asserts a §1983 claim against Defendants City of New York, claiming it "engaged in conduct that constituted a custom, usage, practice, procedure or rule" by "arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics" and "arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing."  (Complaint ¶¶ 57-59.)

A "local government may not be sued under §1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To sustain a §1983 claim against a local government, a plaintiff must demonstrate that a policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee.  *Monell,* 436 U.S. at 691-92.  A policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which the supervising policy-maker must have been aware.  *See, e.g., Connick v. Thompson*, 131 S.Ct. 1350 (2011).  The plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice such that "execution of [the] government's policy or custom" inflicted the alleged injury.  *Id.*

Plaintiff's complaint sets forth only naked boilerplate allegations that Defendant City

maintained a policy of arresting individuals in the absence of probable cause. Although the custom or policy in question may be established by reference to a single incident of unconstitutional activity, the plaintiff must show that the policy itself was unconstitutional. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Plaintiff has failed to identify any policy and any such claim is not supported by the record.

Accordingly, Plaintiff's claim against Defendant City of New York is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt nos. 22-26] is GRANTED, Plaintiff's cross-motion for summary judgment [dkt. nos. 16-18] is DENIED, and this case is hereby DISMISSED.

SO ORDERED.

Dated:     New York, New York
           March **3**  , 2013

                                   *Loretta A. Preska*
                                   LORETTA A. PRESKA, Chief U.S.D.J.

21